# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Joshua Michael Grantz,

     Appellant

v.

Fashion Show Mall, LLC,

     Appellee

Case No.: 2:20-cv-00043-JAD

**Order Affirming Bankruptcy Court Decision**

Debtor Joshua Michael Grantz appeals the bankruptcy court's denial of his contempt motion against creditor Fashion Show Mall, LLC, after Fashion Show collected on a debt Grantz contends was discharged in bankruptcy. Because I find that the Fashion Show debt was excepted from discharge under 11 U.S.C. § 523(a)(3)(A), I affirm the bankruptcy court's decision and close this case.

## Background

In 2003, Grantz and his wife Meital[1] leased a commercial space at the Fashion Show Mall in Las Vegas for their business, Talulah G.[2] Only Meital signed the ten-year lease, but both spouses signed "a written and unconditional personal guaranty" of Talulah G's obligations under the lease.[3] In 2008, the Grantzes divorced, and in the divorce decree the court ordered that "the parties are to share equally the debt owed by Talulah G, Inc." but that Meital "will assume 100

---

[1] I refer to the former Mrs. Grantz by her first name, Meital, for clarity. No disrespect is intended by doing so.

[2] When the Grantzes leased this property, the landlord was listed as Rouse F.S., LLC. Excerpts of record (EOR) 480. The parties do not dispute that Fashion Show Mall LLC is the successor to Rouse F.S., LLC's interest under the lease and Grantz's guaranty. EOR 481. I refer to both entities as "Fashion Show" throughout this order.

[3] EOR 481.

percent of the debt owed by Talulah G, Inc."[4]  Fashion Show was not a party to the divorce case, of course, and while it assigned responsibility for Talulah G's debts to Meital, "it did not release [Grantz] from liability under the terms of the written guaranty" he signed when the Grantzes leased the commercial space.[5]

In 2009, Meital sold Talulah G.[6]  The buyer continued operating the store but quickly fell behind on lease payments, ultimately defaulting and vacating the space before the lease expired.[7] Grantz was not informed of the sale or the default.[8]  In July 2009, Grantz filed for Chapter 7 bankruptcy protection.[9]  Grantz listed his business interests in Talulah G. in his statement of financial affairs, but he did not list the personal guaranty as one of his debts, nor did he list Fashion Show as a creditor, in any of the schedules he filed in support of his bankruptcy petition.[10]  As a result, Fashion Show was not served with notice of Grantz's bankruptcy case when it began.[11]

In December 2009, the trustee assigned to administer Grantz's bankruptcy estate filed an asset report stating that he had identified non-exempt assets in the debtor's estate that could result in a dividend to creditors.[12]  The case was then changed from a no-asset case to an asset case, and in April 2010, the trustee filed a notice of assets and notice to file claims advising

---

[4] EOR 482 (citing divorce decree and default judgment).

[5] EOR 483.

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] EOR 484.

[10] EOR 45; EOR 484.

[11] EOR 484–85.

[12] EOR 485.

creditors that, "to be considered for a dividend[,] . . . a proof of claim must be filed [by] July 1, 2010."[13]  That date is referred to as a claims-bar date.  Because Fashion Show was not listed as a creditor in any of the schedules filed with Grantz's bankruptcy case, it was not served with the trustee's notice.[14]  The trustee ended up recovering assets of $2,016.70, some of which covered administrative fees and the rest went to the California State Board of Equalization.[15]  Grantz's case was closed on March 30, 2011, "with [Fashion Show] having [n]ever been scheduled as a creditor pursuant to the debtor's guaranty of the lease or, to the extent of the record before the [bankruptcy] [c]ourt, having ever had actual knowledge of the case."[16]

In January 2013, Fashion Show sued Grantz, Meital, and Talulah G seeking recovery of unpaid rent under the lease and guaranty.[17]  Grantz failed to appear or defend against that action, and Fashion Show was awarded a default judgment against him for $134,322.02 in October 2013.[18]  In 2015, Grantz moved to reopen his bankruptcy case "so that he may list three personal guarantees on leases as dischargeable debts."[19]  His case was reopened and Grantz filed an amendment to Schedule G—which asks for any executory contracts and unexpired leases—identifying Fashion Show as the other party to a "retail lease executed on 6/6/2003 personally guaranteed by debtor . . . ."[20]  But Grantz did not amend any other schedules to list Fashion

---

[13] EOR 60.

[14] EOR 487.

[15] EOR 77–78.

[16] EOR 487; EOR 92.

[17] EOR 415–23.

[18] EOR 436–38.

[19] EOR 108–39.  Grantz initially tried to reopen his bankruptcy case in February 2014, but a combination of docketing errors and attorney inaction prevented that motion from being acted on.  See EOR 93–107; EOR 6–7 (bankruptcy court docket).

[20] EOR 142–145.

1  Show as a creditor.[21]  Grantz's amendments were served on Fashion Show's counsel.[22]  The case

2  was closed again in February 2016.[23]

3          In October 2019—more than three years after his bankruptcy case was closed for a

4  second time—Grantz again moved to reopen it, this time for the purpose of filing a contempt

5  claim against Fashion Show for violating his discharge injunction when it collected its default

6  judgment through a writ of execution against Grantz's bank account.[24]  The case was reopened

7  and Grantz filed a contempt motion, which Fashion Show opposed.[25]  Grantz argued that Fashion

8  Show's debt was discharged in his bankruptcy and that attempting to collect was thus a violation

9  of his discharge injunction.  Fashion Show argued that its debt wasn't discharged in Grantz's

10 bankruptcy under 11 U.S.C. § 523(a)(3)(A) because the guaranty claims were omitted from his

11 statements and schedules and Fashion Show therefore did not have notice or actual knowledge of

12 the bankruptcy case in time to file a proof of claim by the July 1, 2010, deadline.  It also argued

13 that, even if the bankruptcy court found that the debt was discharged, contempt was not the

14 appropriate sanction.

15         The bankruptcy court denied Grantz's motion, finding that the plain language of

16 § 523(a)(3)(A) applied to Fashion Show's claim, and because Fashion Show was not given

17 notice of the bankruptcy proceedings before the claims-bar date, the guaranty was not

18

19

20

21 [21] EOR 490.

22 [22] *Id.*

   [23] EOR 150.

23 [24] EOR 490.

   [25] EOR 244–345 (Grantz's motion for contempt); EOR 346–438 (Fashion Show's opposition).

discharged.[26]  It also found that, even if the debt had been discharged, contempt sanctions would be unwarranted.[27]  Grantz appeals the bankruptcy court's decision.

### Discussion

### I.    Standards of review

"In bankruptcy discharge appeals, [appellate courts] review[] the bankruptcy court's findings of fact for clear error and conclusions of law de novo, and appl[y] de novo review to 'mixed questions' of law and fact . . . ."[28]  A bankruptcy court's interpretation of a statute is reviewed de novo.[29]  "In reviewing the bankruptcy court's finding of a willful violation of [a debtor's discharge injunction], a district court applies the clearly erroneous standard of review."[30]  Reviewing courts "review for abuse of discretion the bankruptcy court's finding of civil contempt and imposition of sanctions."[31]  And the bankruptcy court's "findings of fact in connection with the civil contempt order" are reviewed for clear error.[32]

### II.   Relevant law

A bankruptcy discharge under 11 U.S.C. § 727 "discharges the debtor from all debts that arose before the date of the order for relief."[33]  Section 523 provides exceptions to § 727's general rule.[34]  As relevant here, § 523(a)(3)(A) states that bankruptcy "does not discharge an

---

[26] *See* EOR 492–502.

[27] EOR 502.

[28] *In re Weinberg*, 410 B.R. 19, 28 (B.A.P. 9th Cir. 2009).

[29] *In re Boyajian*, 564 F.3d 1088, 1090 (9th Cir. 2009).

[30] *Sciarrino v. Mendoza*, 201 B.R. 541, 543 (E.D. Cal. 1996) (citing *In re McHenry*, 179 B.R. 165, 167 (B.A.P. 9th Cir. 1995)).

[31] *In re Icenhower*, 755 F.3d 1130, 1138 (9th Cir. 2014) (citations omitted).

[32] *Id.*

[33] 11 U.S.C. § 727(b).

[34] *See id.*; *id.* at § 523.

individual from any debt . . . [that is] neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit . . . timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing."[35]  The Supreme Court has explained that "[w]hen [a] statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."[36]  The Ninth Circuit Bankruptcy Appellate Panel has held that "§ 523(a)(3)(A) is clear and not ambiguous: a debt is excepted from discharge if the creditor was neither listed nor scheduled and did not otherwise know of the bankruptcy case in time to file a timely [proof of claim]."[37]  Courts interpreting this statute have emphasized that it does not allow consideration of equitable factors to determine whether a debt that was not listed or noticed could still be discharged notwithstanding the plain language of § 523(a)(3)(A).[38]

## III.   The bankruptcy court's decision is affirmed.

### A.   A plain reading of § 523(a)(3)(A) confirms that the debt was not discharged.

The parties agree that § 523(a)(3)(A) is the applicable statute to determine whether the disputed debt was discharged in Grantz's bankruptcy.[39]  Fashion Show argues that because it lacked notice of Grantz's bankruptcy by the claims-bar date, the plain language of the statute

---

[35] *Id.* at § 523(a)(3)(A).

[36] *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004).

[37] *In re Mahakian*, 529 B.R. 268, 275 (B.A.P. 9th Cir. 2015).

[38] *In re Beezley*, 994 F.2d 1433, 1439–1440 (9th Cir. 1993) (O'Scannlain, J. concurring), holding and reasoning adopted in *In re Nielson*, 383 F.3d 922, 925 (9th Cir. 2004); *see also In re Mahakian*, 529 B.R. at 276–77; *In re Menaker*, 603 B.R. 628, 632–34 (Bankr. C.D. Cal. 2019).

[39] *See* ECF No. 12 at 12–13; ECF No. 21 at 16.

applies and the debt secured by Grantz's guaranty was not discharged.[40]  Grantz focuses on the word "known" in the statute and contends that he did not know he owed the debt, thus making § 523 inapplicable.[41]

Grantz's arguments are based on a misunderstanding of § 523(a)(3)(A) and the caselaw interpreting it.  A plain reading of the statute confirms that it does not exempt from application debts that are not "known" to the debtor.  Rather, it excludes any debt not listed or scheduled along with the name of the creditor, if that *name is known* to the debtor.[42]  "Known" modifies the name of the creditor, not the debt.[43]  Grantz does not deny that he knew Fashion Show's name or that he knew he signed the personal guaranty securing the debt.  He argues instead that because he signed the guaranty many years earlier and thought his debt was assumed by his ex-wife in the divorce, he didn't know he still owed it.  But, as the Ninth Circuit Bankruptcy Appellate Panel has emphasized, under § 523's plain language, "the reason why a debt was omitted from the bankruptcy schedules is irrelevant."[44]  I therefore decline to consider Grantz's attempts to explain away his failure to list this Fashion Show debt.

The Bankruptcy Appellate Panel's opinion in *In re Mahakian* illustrates the folly of Grantz's position.[45]  There, the debtor omitted a creditor from his schedules because he believed

---

[40] ECF No. 21 at 10–16.

[41] ECF No. 12 at 12–15.

[42] *See* § 523(a)(3)(A) (bankruptcy "does not discharge an individual from any debt . . . [that is] neither listed nor scheduled under section 521(a)(1) of this title, *with the name, if known to the debtor, of the creditor to whom such debt is owed . . .*").

[43] *Id.*

[44] *In re Mahakian*, 529 B.R. at 277 (quoting O'Scannlain concurrence in *In re Beezley*, 994 F.2d at 1439).

[45] *Id.*

his brother assumed the debt.[46]  The creditor was not given notice of debtor's bankruptcy in time

to file a claim and later took action to collect the debt.[47]  The debtor amended his schedules to

add the creditor and then sought a determination that any debt owed to the creditor was

discharged in his bankruptcy.[48]  He argued that the excusable-neglect standard applies in cases

governing the timeliness of creditor claims and thus excused his failure to initially list the

creditor.[49]  The Bankruptcy Appellate Panel held that the plain language of § 523(a)(3)(A)

controlled and excepted the debt from discharge because the debtor "did not list or schedule the

debt . . . prior to the claims bar date and that [the creditor] did not have notice or actual

knowledge of the case in time to file a timely [proof of claim]."[50]  It further held that "a plain

reading of § 523(a)(3)(a) [] does not contain any equitable exceptions" and that the excusable-

neglect standard did not apply because it would "make a nullity of § 523(a)(3)(A) concerning the

consequence of not properly listing or scheduling" a debt.[51]

       I find *Mahakian* persuasive and adopt its reasoning here.  Section 523(a)(3)(A) must be

applied according to its plain language, regardless of any equitable circumstances that may

benefit a debtor who failed to list a debt.[52]  Doing so would upset the "balance [Congress] struck

between the rights of creditors on the one hand, and the policy of affording the debtor a fresh

---

[46] *Id.* at 272.

[47] *Id.* at 271.

[48] *Id*. at 272.

[49] *Id.*

[50] *Id.* at 275.

[51] *Id*. at 276, 277.

[52] *See*, *e.g.*, *In re Beezley*, 994 F.2d at 1439; *In re Mahakian*, 529 B.R. at 276; *In re Menaker*, 603 B.R. at 632–34.

start on the other."[53]  Grantz admits that he failed to list his Fashion Show debt in any of his

bankruptcy documents prior to the claims-bar date.[54]  He does not deny that Fashion Show did

not have notice or actual knowledge of his bankruptcy proceedings before that date.  By the plain

language of § 523(a)(3)(A) then, the debt owed to Fashion Show was not discharged in Grantz's

bankruptcy.

>    **B.    _In Re Beezley_ cannot be extended to this asset case.**

Grantz urges the court to extend the reasoning in _In re Beezley_, a case concerning a no-

asset bankruptcy case, to the facts here.[55]  In _Beezley_, a debtor with no assets failed to list a

creditor on his lists and schedules prior to discharge.[56]  When the debtor moved to reopen his

case and amend his schedules, the creditor opposed, claiming that its debt was not discharged

under § 523(a)(3)(A).  The bankruptcy court denied the motion to reopen, and the Ninth Circuit

affirmed, noting that, in a no-asset, no-bar-date Chapter 7 case, "dischargeability is unaffected by

scheduling [and] amendment of [debtor's] schedules would thus have been a pointless

exercise."[57]  Judge O'Scannlain concurred in the judgment and further explained that, in no-asset

cases in which a creditor cannot expect to collect dividends, "the date to file claims is never set

and thus § 523(a)(3)(A) is not triggered."[58]  In _In re Nielsen_, the Ninth Circuit adopted Judge

O'Scannlain's reasoning and held that "while section 523(a)(3)(A) makes some otherwise

dischargeable debts non-dischargeable if the creditor is not scheduled, that provision does not

---

[53] _In re Beezley_, 994 F.2d at 1439 (O'Scannlain, J., concurring).

[54] ECF No. 12 at 7.

[55] ECF No. 12 at 16.

[56] _In re Beezley_, 994 F.2d at 1434.

[57] _Id._

[58] _Id._ at 1436 (citing _In re Walendy_, 118 B.R. 774, 775 (Bankr. C.D. Cal. 1990)).

have that effect in a no-assets, no-bar-date Chapter 7 bankruptcy . . . because, in such a bankruptcy, there is no time limit for 'timely filing of a proof of claim' so none are untimely" under § 523(a)(3)(A).[59]

As noted by the Bankruptcy Appellate Panel in *Mahakian*, "the actual holding of *Beezley* is irrelevant to an asset case such as this."[60]  But Grantz suggests that *Beezley* should apply here because, although his was an asset case, all of his assets were paid to a creditor with priority over Fashion Show.[61]  Grantz contends that Fashion Show was not prejudiced by Grantz's omission as it would not have been paid dividends from the discharge even if it had been timely listed.[62]  I decline to so extend *Beezley* because doing so would read equitable considerations into § 523(a)(3)(A) where none exist.[63]  The statute does not allow courts to make exceptions based on how much the debtor has in assets or on the relative priority of creditors who hold his debts. It strictly applies to asset cases when a debt is not listed and the creditor did not have the notice or knowledge necessary to file a timely proof of claim.  That is what happened here, so *Beezley* does not apply and the Fashion Show debt was not discharged.

### C.   The 2015 order reopening Grantz's case does not impact the dischargeability of the Fashion Show debt.

Grantz next argues that, because he explained the reason for reopening his case in his 2015 motion to reopen—"so that he may list three personal guarantees on leases as dischargeable debts"—and the bankruptcy judge granted that motion, "it is reasonable to conclude that she

---

[59] *In re Nielsen*, 383 F.3d at 926–27.

[60] *In re Mahakian*, 529 B.R. at 276.

[61] ECF No. 12 at 16.

[62] *Id*.

[63] *See In re Mahakian*, 529 B.R. at 276–77.

reopened [the] case to allow [the] personal guarantees including Fashion Show['s] to be added so they [could] be discharged."[64]  Grantz fails to explain how the order reopening his case has any impact on the discharge of his debts, regardless of the reason for which it was granted.  Indeed, "reopening a case in order to add an omitted creditor will not result in relief being afforded to a debtor because, unless the creditor had actual notice of the bankruptcy, [under] § 523(a)(3), the omitted debt will not be discharged."[65]  The fact that Grantz's case was reopened has no bearing on whether his Fashion Show debt was discharged because the claims-bar date had passed almost five years before his motion to reopen was granted.  Therefore, § 523(a)(3)(A) applied, Fashion Show did not have notice, and the debt was not discharged.

### D. The bankruptcy court correctly determined that Fashion Show did not violate Grantz's discharge injunction and was not subject to contempt sanctions.

"To prove that a sanctionable violation of the discharge injunction has occurred, the debtor must show that the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction."[66]  The first prong of the test "requires that the bankruptcy court be shown that the target creditor knew that the discharge injunction was applicable to its claim."[67]  The debtor "has the burden of proving, by clear and convincing evidence, that the sanctions are justified."[68]  "A court may hold a creditor in civil contempt for

---

[64] ECF No. 12 at 10.

[65] *In re Bowen*, 102 B.R. 752, 753–54 (9th Cir. 1989); *see also In Re Beezley*, 994 F.2d at 1437 (pointing out that re-scheduling of a debt is irrelevant because "[e]ither the debt was long ago discharged by the operation of sections 523 and 727 or it was not").

[66] *In re Nash*, 464 B.R. 874, 880 (B.A.P. 9th Cir. 2012) (quoting *Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1205 n.7 (9th Cir. 2008)).

[67] *Id*. (citing *ZiLOG, Inc. v. Corning*, 450 F.3d 996, 1007–09 (9th Cir. 2006)).

[68] *Id*.

violating a discharge order where there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order."[69]  As discussed *supra*, because Fashion Show's debt was not discharged under § 523(a)(3)(A), it follows that the discharge injunction did not apply to Fashion Show's claim.[70]  Grantz presents no clear and convincing evidence that Fashion Show thought otherwise or acted with the intent to violate the injunction.  So I find that the bankruptcy court did not err in determining that Fashion Show didn't violate Grantz's discharge injunction and denying Grantz's motion for sanctions on that basis.

### Conclusion

Accordingly, **I AFFIRM** the bankruptcy court's decision denying Grantz's motion for contempt.

As this case is concluded, the Clerk of Court is directed to **ENTER JUDGMENT** accordingly and **CLOSE THIS CASE**.

_____
U.S. District Judge Jennifer A. Dorsey
February 10, 2022

---

[69] *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1804 (2019).

[70] *See supra* at pp. 6–11.